Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| CHRISTIAN PEÑA BETANCES<br>Demandante-Recurrido<br><br><br>V.<br><br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Demandado-Peticionario | KLCE202301116 | CERTIORARI<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan,<br><br>Caso Núm.: KDP2016-0895<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de noviembre de 2023.

-I-

Comparece el Estado Libre Asociado de Puerto Rico (parte peticionaria), representado por la Oficina del Procurador General (OPG) mediante recurso de certiorari y solicita que revisemos una Resolución notificada el 10 de abril de 2023 por el Tribunal de Primera Instancia, Sala de San Juan (TPI), en la que dicho foro ordenó la reapertura y continuación de los procedimientos en el caso ante su consideración y dejó sin efecto la sentencia de paralización emitida el 15 de agosto de 2017.[1] Se adelanta la denegatoria a expedir el auto solicitado. Veamos.

Los hechos de la controversia ante nuestra consideración se remontan al 10 de agosto de 2016 con la presentación de una

---

[1] Véase la página 52 del apéndice de la parte peticionaria.

Demanda por parte del señor Christian Peña Betances (recurrido). En la demanda original, el recurrido acumuló como demandados al Estado Libre Asociado de Puerto Rico; al Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico (DTOP); al Municipio de San Juan; a la Autoridad de Acueductos y Alcantarillados (AAA); a Triple S Propiedad; y a varios demandados y aseguradoras de nombre desconocido, ello con el propósito de obtener una indemnización en daños y perjuicios tras, sufrir una alegada caída en el Expreso Román Baldorioty de Castro el 20 de marzo de 2014.

Según se alegó, al momento de la caída el recurrido iba conduciendo su automóvil por la referida carretera y luego de que su vehículo confrontara problemas se bajó de este y caminó por la parte de atrás del lugar donde detuvo el vehículo para llegar al lado del pasajero. En ese momento se cayó en un hueco que resultó ser una alcantarilla sin cubierta. El peticionario arguyó que el incidente le ocasionó daños físicos, sufrimientos y angustias mentales, así como pérdida de ingresos, por lo cual solicitó una indemnización ascendente a $140,000.00. Caber señalar, que el recurrido había presentado una demanda en daños y perjuicios por los mismos hechos el 12 de marzo de 2015. Esta demanda fue desistida sin perjuicio en contra todas las partes demandadas.

El Estado contestó la demanda el 9 de mayo de 2017. El 14 de agosto de 2017, el Estado presentó su Aviso de Paralización de los Procedimientos por Virtud de la Presentación de la Petición Sometida por el Gobierno de Puerto Rico Bajo el Título III de PROMESA. El 15 de agosto de 2017, el Tribunal de Primera Instancia dictó una Sentencia Parcial en la cual decretó la paralización de los procedimientos en cuanto al Estado y el DTOP, y, en consecuencia, ordenó su archivo para fines administrativos. Además, se reservó jurisdicción para decretar la reapertura del caso,

en caso de que la orden de paralización fuese dejada sin efecto, o cuando, por otra razón, procediera la continuación de los procedimientos. Asimismo, resolvió que, en caso de que la reclamación quedara totalmente adjudicada en el proceso ante la Sala de Título III, la referida Sentencia Parcial se consideraría definitiva.

El 2 de mayo de 2018, la parte peticionaria presentó una moción informativa sobre el procedimiento para solicitar ante la Sala de Título III un relevo de la paralización automática aplicable a la demanda. El 9 de abril de 2019, TPI dictó una Sentencia mediante la cual ordenó el archivo, sin perjuicio, de la demanda.

El 17 de abril de 2023, el TPI emitió la Resolución de Reapertura del Caso de la cual recurre la parte peticionaria. Mediante ese dictamen, resolvió que la Sentencia de 9 de abril se dictó únicamente en cuanto a la reclamación contra la AAA. Así las cosas, el TPI ordenó reabrir el caso y dejó sin efecto la Sentencia de 15 de agosto de 2017 que decretó el cierre administrativo del caso en cuanto al Estado en virtud de la paralización automática surgida tras la presentación de la petición de reestructuración de la deuda de Puerto Rico. En su determinación, el TPI ordenó expresamente la continuación de los procedimientos, por lo que les concedió a las partes un término de veinte días para presentar un plan de trabajo sobre el descubrimiento de prueba pendiente, el cual estableció debería concluir el 31 de agosto de 2023.

El 4 de mayo de 2023, la parte peticionaria solicitó reconsideración. Expuso que el caso de título continuaba paralizado en virtud de PROMESA, por lo que el Tribunal de Primera Instancia carecía de jurisdicción para continuar tramitándolo, a tenor con el interdicto emitido por la Sala de Título III que atiende la petición de reestructuración de la deuda del Gobierno de Puerto Rico, tras ser confirmado el Plan de Ajuste de esa deuda. Además, solicitó que se

le ordenara al demandante acreditar si había presentado un "*proof of claim*" ante la Sala de Título III y señaló que, de haber ocurrido, correspondía liquidar la reclamación mediante el proceso de resolución aplicable al caso de la reestructuración de la deuda del Gobierno, sobre el cual el TPI carece de jurisdicción. Puntualizó que, de no acreditarse la presentación de un "*proof of claim*" correspondería la desestimación de la demanda, con perjuicio. El 10 de mayo de 2023, el Tribunal de Primera Instancia emitió una Orden que notificó al día siguiente, a través de la cual le concedió al recurrido un plazo de diez días para expresarse sobre la moción de reconsideración del Estado. Tras solicitar y concedérsele un término adicional a esos efectos, la parte recurrida cumplió con dicha Orden el 31 de mayo de 2023. En su moción, informó que había presentado un "*proof of claim*" ante la Sala de Título III, solicitando así que continuaran los procedimientos ante el TPI. El 7 de junio de 2023, el TPI dictó y notificó una Orden para concederle a la parte peticionaria un término de diez días para replicar la moción del demandante.

El 11 de julio de 2023, la parte peticionaria presentó una Comparecencia Especial en Cumplimiento de Orden y Reiterando Moción de Reconsideración. Expuso que, en virtud de PROMESA, aún continúa en vigor la protección del mecanismo de la paralización automática del Código Federal de Quiebras que se activó con la presentación de la petición de reestructuración de la deuda del Gobierno de Puerto Rico, por lo que los procedimientos del caso de título no podían continuar ante el TPI. El 19 de julio de 2023, el TPI emitió una Orden mediante la cual le concedió veinte días al recurrido para replicar dicha moción del Estado. El 1 de agosto de 2023, el recurrido presentó una Moción en Cumplimiento de Orden y en Solicitud para que le permitieran enmendar la demanda con el propósito de ajustar la cuantía reclamada a los

límites establecidos en la Ley de Pleitos contra el Estado. Así pues, el demandante unió a su moción una Primera Demanda Enmendada, la cual dirigió contra el Estado y varios demandados de nombre desconocido, en la cual reclama una indemnización monetaria de $75,000.00 contra el Gobierno de Puerto Rico por los mismos hechos ocurridos el 20 de marzo de 2014 que motivaron la presentación de la demanda original. El 4 de agosto de 2023, la parte peticionaria se opuso a esa moción. El 9 de agosto de 2023, el TPI dictó una Orden en la cual le concedió a la parte recurrida un término de siete días para replicar, la cual incumplió. El 6 de septiembre de 2023 el TPI dictó una Resolución mediante la cual adjudicó definitivamente la moción de reconsideración presentada por la parte peticionaria contra la Resolución recurrida. A través de esa Resolución, el TPI denegó la moción de reconsideración y autorizó la enmienda a la demanda. En desacuerdo, el Estado comparece ante nosotros mediante recurso de certiorari y nos solicita la revisión y revocación de la antedicha determinación, argumentando que el TPI erró al negarse a acatar la orden interdictal emitida el 18 de enero de 2022 por la Sala de Título III que atiende el proceso de reestructuración de las deudas del Gobierno de Puerto Rico y al interpretar incorrectamente el alcance de la modificación realizada a dicho mandato el 10 de octubre de 2022, al continuar con los procedimientos del caso de epígrafe, a pesar de que carece totalmente de jurisdicción para hacerlo.

-II-

-A-

Distinto al recurso de apelación, el *certiorari* es un recurso extraordinario cuya característica se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391 (2021); 800 *Ponce de León v. AIG*, 205 DPR 163 (2020); *IG*

*Builders et al. v. BBVAPR*, 185 DPR 307 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp et al.*, 202 DPR 478 (2019). La Regla 52.1 de Procedimiento Civil también dispone que sólo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales regulados por la Regla 56, de la Regla 57, (mecanismo de *injunction*) o de la denegatoria de una moción de carácter dispositivo." *800 Ponce de León v. AIJ, supra.*

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional:

A.     Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B.     Si la situación de hechos planteada es la más indicada para el análisis del problema.

C.     Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D.     Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.     Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.     Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.     Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

-B-

En repetidas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción es el más poderoso instrumento reservado a los jueces. *Rodríguez v.*

*Pérez,* 161 DPR 637, 651 (2004); *Banco Metropolitano v. Berríos,* 110 DPR 721, 725 (1981). Así pues, es norma reiterada que este Foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

-C-

La jurisdicción se define como el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020). En Puerto Rico, los tribunales son foros de jurisdicción general por lo que, de ordinario, pueden atender todo tipo de controversia que sea traída ante su consideración, excepto que carezcan de jurisdicción sobre la materia. *Adm. Terrenos v. Ponce Bayland, supra; Beltrán Cintrón et al. v. ELA et al., supra*; *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Beltrán Cintrón et al. v. ELA et al., supra, citando a Rodríguez Rivera v. De León Otaño, supra.* Sobre este particular, nuestro Tribunal Supremo ha expresado que el Estado, a través de sus leyes, es quien único puede otorgar o privar a un tribunal de jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño, supra; Unisys v. Ramallo Brothers*, 128 DPR 842, 862 esc. 5, 1991 Juris P.R. No. 69 (1991).

Así pues, para privar a un tribunal de jurisdicción, es necesario que algún estatuto lo disponga expresamente o que surja de él por implicación necesaria. *Báez Rodríguez et al. v. E.L.A.,* 179

DPR 231, 241, (2010). La falta de jurisdicción sobre la materia acarrea las siguientes consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Beltrán Cintrón et al. v. ELA et al.*, *supra*, en las págs. 101-102. Véase También, J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era Ed. 25. (2010).

-D-

Con el fin de lidiar con la situación económica de Puerto Rico, el Congreso de Estados Unidos aprobó el *Oversight, Management, and Economic Stability Act* (PROMESA), 48 USCA sec. 2101 et seq. El Título III de PROMESA viabilizó el procedimiento para que el Gobierno de Puerto Rico pudiera invocar protecciones análogas a las disponibles para una parte que insta una petición de quiebra. Por esto, incorporó ciertas disposiciones de la Ley de Quiebras federal. 48 USCA sec. 2161. La legislación federal de quiebras se aprobó con el propósito de ofrecerle al deudor una herramienta que le brinde solución a sus problemas financieros a largo plazo y le permita comenzar de nuevo, entre otras cosas. *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct 1938, 1950, 195 L. Ed. 2d 298 (2016); *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). Dentro de las cláusulas de la Ley de Quiebras federal que fueron incorporadas en PROMESA, se encuentra la disposición referente a la paralización automática, 11 USCA. sec. 362.

La paralización automática es una de las protecciones básicas que le ofrece el procedimiento de quiebras al deudor. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986). Esta paralización tiene como propósito proteger al deudor de las reclamaciones del acreedor y, además, proteger a los acreedores de reclamaciones realizadas por otros acreedores. Alan N. Resnick & Henry H. Sommer, *Collier on Bankruptcy*, sec. 362.03. En otras palabras, busca preservar el caudal del deudor para que se pueda llevar un proceso ordenado de reorganización. *Morales Pérez v. Policía de Puerto Rico*, 200 DPR 1 (2018) (Martínez Torres, voto de conformidad) *citando a Midlantic Nat'l Bank v. New Jersey Dep't of Envtl.* Prot., *supra*, en la pág. 503. El efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. 11 USCA sec. 362(a). *Morales Pérez v. Policía de Puerto Rico, supra.* De otro modo, las reclamaciones que prosiguieran su curso en los tribunales tendrían una preferencia que la ley no les concede, pues cobrarían antes que los demás deudores y, a diferencia de estos, podrían resarcir su deuda de forma íntegra. *Id.* Todo ello, empequeñecería indebidamente el caudal del quebrado, en perjuicio suyo y de los demás acreedores. *Id.* Para evitar esto, la paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. Por lo tanto, los tribunales estatales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. *Morales Pérez v. Policía de Puerto Rico, supra, citando a Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491, (2010), *In re Jamo,* 283 F.3d 392, 398 (1er Cir. 2002). Por su parte, la Sec.

362(b), 11 USCA 362(b), menciona una serie de excepciones a la paralización automática. **Esta permanecerá hasta que culmine el proceso o hasta que el tribunal federal la levante parcial o totalmente, de acuerdo con el procedimiento establecido en la Sec. 362(d) de la Ley de Quiebras federal, 11 USCA sec. 362(d***).* (Énfasis nuestro). Véase *Morales Pérez v. Policía de Puerto Rico, supra,* citando a *In re Jamo,* supra, en la pág. 398. Cabe destacar que siempre que una controversia contenga una reclamación monetaria y otra reclamación que no lo sea, todas las etapas del caso quedan paralizadas automáticamente al presentarse la petición de quiebra, ya que no caen dentro de las excepciones a la paralización. En caso de que las partes entiendan que se debe levantar la paralización, deberán acudir al tribunal federal para que ese foro levante parcial o totalmente la paralización. *Id* en la pág. 1285.

Asimismo, el propio texto del Título III de PROMESA, 48 USCA sec. 2164, indica que "[e]l inicio de un caso bajo este título constituye una orden de suspensión" (traducción oficial). De lo contrario, el caudal del deudor disminuiría antes de que el tribunal de quiebras evalúe la condición económica del deudor y su plan de pago. Todo esto derrotaría el propósito de proveer un proceso ordenado y uniforme de reorganización de las finanzas del deudor. Véase *Morales Pérez v. Policía de Puerto Rico*, *supra* (Martínez Torres, voto de conformidad).

-III-

Tal como adelantamos, el Tribunal General de Justicia es de jurisdicción general. Por lo tanto, nuestros Tribunales están facultados para atender todo tipo de controversias, a menos que no estemos específicamente limitados por una ley que así lo establezca. Ciertamente, los Tribunales debemos ser celosos con nuestra Jurisdicción. Por ello, estamos facultados, a instancia propia, para

decretar, de así proceder, la falta de jurisdicción sobre la materia en cualquier etapa de los procedimientos.

Ahora bien, ante esta controversia, es imprescindible determinar si la Orden Modificatoria, emitida por el Tribunal Federal de Distrito en el caso de la restructuración fiscal del Gobierno de Puerto Rico, dejó sin efecto la paralización y permite que el TPI readquiera jurisdicción sobre la materia. Entendemos, al igual que el TPI, que procede la continuación de los procedimientos. La parte peticionaria argumentó que el caso en controversia está sujeto al injunction dispuesto en el párrafo declarativo número 59 de la Orden de Confirmación del Plan de Ajuste Fiscal del Gobierno de Puerto Rico, el cual provee lo siguiente:

> Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the

> PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

Según estos términos, el presente caso se encontraría paralizado y, por tanto, este TPI no tendría jurisdicción sobre la materia para continuar los procedimientos. No obstante, la parte peticionaria ignora que la Orden Modificatoria altera los términos dispuestos en el injunction dispuesto en el párrafo declarativo número 59 de la Orden de Confirmación del Plan de Ajuste Fiscal del Gobierno de Puerto Rico. A esos efectos, el párrafo número 6 de la Orden Modificatoria dispone lo siguiente con relación al párrafo número 59 antes relacionado:

> The injunctions contained in section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order are modified solely to the limited extent of allowing litigation with respect to claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, to proceed to final judgment and execution, including any appeals.

A pesar de esto, la parte peticionaria insiste en que esta orden solo aplica a reclamaciones surgidas después del 3 de mayo de 2017, y antes del 15 de marzo de 2022. Además, argumentó que la Orden Modificatoria solo permite que se continúen los procesos en cuanto a reclamaciones amparadas en la Ley de Reclamaciones y Demandas contra el Estado y sus respectivos límites de cuantía. Por tanto, la parte peticionaria precisó que la Orden Modificatoria no aplica al presente caso, toda vez que la causa de acción es anterior a la petición de quiebras del Gobierno y excede los límites de cuantías que impone la Ley de Reclamaciones y Demandas contra el Estado. En apoyo a su primer fundamento, la parte peticionaria se refirió al párrafo número 5 de la Orden Modificatoria, el cual dispone lo siguiente:

> The requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order shall not apply to any of the following claims or causes of action arising from and after the applicable petition date with respect to the Commonwealth, ERS, and PBA and prior to the

Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (ili) claims for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1400 et seq., (iv) tax refund claims, and (v) claims autorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 o $150,000, as applicable.

Coincidimos con la interpretación que realizó el TPI sobre el anterior párrafo de la Orden Modificatoria. Se trata de una excepción a lo dispuesto en la Orden de Confirmación. Este párrafo establece el procedimiento a seguir para someter reclamaciones por gastos administrativos.[2] Recientemente, el Tribunal Federal de Distrito reiteró lo que es un gasto administrativo, precisamente en el caso de *In re Financial Oversight and Management Board for Puerto Rico*, 635 B.R. 201, 210 (2021) y, a esos fines, expresó que estos incluyen: [The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the casel.]"'. *In re* Financial Oversight and Management Board for Puerto Rico, supra, citando a, Mason v. Official Comm. of Unsecured Creditors, 330 F.3d 36, 41 (2003). Coincidimos con la interpretación que realizó el TPI al concluir que la reclamación del recurrido no se trata de un gasto administrativo sujeto a lo dispuesto en el referido párrafo número 5 de la Orden Modificatoria. Por lo tanto, y al amparo de la Orden Modificatoria concluimos que el TPI posee jurisdicción sobre la materia para ordenar la continuación de los procedimientos en el presente caso.

Recordamos que, tal y como mencionamos en la parte expositiva de esta sentencia, este Tribunal de Apelaciones solo intervendrá con las determinaciones del TPI cuando encuentre abuso de discreción, o algún error manifiesto. Considerada la

---

[2] Véase Sentencia del TPI.

determinación emitida por el TPI, unido a los fundamentos que anteceden, no observamos que el foro primario haya actuado de tal forma.

-IV-

Por los fundamentos que anteceden, se deniega la expedición del auto de certiorari solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones